UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-80011-CR-ROSENBERG/HOPKINS
Case No. 16-80010-MARRA/MATTHEWMAN

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

KESNER JOASEUS,

        Defendant.

_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Kesner Joaseus (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty in the following two cases:

    A. In Case No. 16-80011-CR-ROSENBERG/HOPKINS (Rental Fraud Case), to Count 1, charging him with conspiracy to commit mail fraud, in violation of Title 18 United States Code, Section 1349, and Count 2, charging him with mail fraud in violation of Title 18 United States Code, Section 1341; and

    B. In Case No. 16-80010-MARRA/MATTHEWMAN (Identity Theft Case), to Count 1, which charges him with access device fraud, in violation of Title 18, United States Code, Section 1029(a)(2), and Count 2, which charges him with aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1).

2. The government agrees to dismiss all remaining counts of both indictments after sentencing. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the Court may impose the following maximum penalties:

**Case No. 16-80011-CR-ROSENBERG/HOPKINS**

Count 1:   Up to 20 years imprisonment

Count 2:   Up to 20 years imprisonment

**Case No. 16-80010-MARRA/MATTHEWMAN**

Count 1:   Up to 10 years imprisonment

Count 2:   2 years imprisonment consecutive to any other sentence

In addition to any term of imprisonment, the Court may impose a term of supervised release of up to 3 years as to each count except Count 2 of the Identity Theft Case, which carries up to one year of supervised release; and a fine of up to $250,000 as to each count. The defendant also acknowledges and agrees to pay restitution in an amount to be determined by the Court to the victims listed in a separate List of Fraud Victims to be provided.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant as to each count. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and

3

the defendant's background.  Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, both parties further reserve the right to make any recommendation as to the quality and quantity of punishment.

6.  The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility.  If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.  The United States further agrees to recommend that the defendant be sentenced at the low end of the guideline range, as that range is determined by the Court.  The United States, however, will not be required to make this motion and these   recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct and the defendant's financial status; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not

4

limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

a. <u>Grouping</u>: That the Rental Fraud and Identity Theft cases be consolidated for sentencing before Judge Rosenberg under Case No. 16-80011, and the two conspiracy counts be grouped, pursuant to Section 3D1.2(d) of the Sentencing Guidelines.

b. <u>Base Offense Level</u>: That the base offense level is seven, pursuant to Section 2B1.1(a)(1);

c. <u>Loss</u>: That the relevant amount of actual, probable or intended loss resulting from the fraud schemes in both cases is more than $550,000, but not more than $1.5 million, which results in a fourteen-level enhancement, pursuant to Section 2B1.1(b)(1)(H) of the Sentencing Guidelines;

d. <u>Number of Victims/Financial Hardship</u>: That the offenses each involved ten or more victims, and that the offense in the Rental Fraud Case resulted in substantial financial hardship to five or more victims, resulting in a 4-level enhancement, pursuant to Section 2B1.1(b)(2)(A);

e. <u>Role in the Offense</u>: That the defendant was an organizer/leader of criminal activity that was otherwise extensive, resulting in a 3-level enhancement, pursuant to Section 3B1.1(b);

  f. <u>Sophisticated Means</u>: That the Rental Fraud offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, resulting in a 2-level enhancement, pursuant to Section 2B1.1(b)(10), and

  g. <u>5 or More Means of Identification</u>: That the Identity Theft offense involved the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, resulting in a 2-level enhancement, pursuant to Section 2B1.1(b)(11)(C)(ii).

  8. Other than the agreements specifically described above, both parties agree to reserve the right to make specific recommendations as to any other sentencing guideline application, and the appropriate sentence after applying the factors in 18 U.S.C. 3553(c). The defendant specifically reserves the right to ask the Court for a downward variance from the sentencing guidelines.

  9. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in

6

paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

10. This agreement and understanding between the United States and the defendant is the entire agreement between the United States and the defendant. There are no other agreements, promises, representations, or understandings unless contained in a letter from the United States Attorney's Office executed by all parties and counsel prior to the change of plea.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 7/28/16     By: _____
                       LAUREN E. JORGENSEN
                       ASSISTANT UNITED STATES ATTORNEY

Date: 7/28/16          _____
                       MARTIN ROTH, ESQ.
                       ATTORNEY FOR DEFENDANT

I have read and carefully reviewed every part of this Agreement with my attorney, and I voluntarily agree to its terms. No one has threatened or coerced me in any way into entering into this Agreement.

Date: 7/28/16          _____
                       KESNER JOASEUS
                       DEFENDANT

7

# UNITED STATES v. KESNER JOASEUS
## ELEMENTS OF OFFENSE AND FACTUAL PROFFER

The United States of America and KESNER JOASEUS agree that, had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt, through admissible evidence and testimony. Accordingly, the defendant admits that the following facts are true and correct and meet all the elements of the offenses to which the defendant is pleading guilty.

**I.   CASE NO. 16-80010-CR-MARRA: ELEMENTS OF THE OFFENSES**

The parties agree that the elements of the offenses to which the defendant is pleading guilty are:

**A.   Access Device Fraud, 18 USC 1029(a)(2), Count 1**

The defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1) The defendant used one or more unauthorized access devices to get things of value totaling $1000 or more during a 12-month period;

(2) The defendant knowingly acted with the intent to defraud or deceive;

(3) The defendant's conduct affected interstate or foreign commerce.

**B.   Aggravated Identity Theft, 18 USC 1341, Count 2**

The defendant can be found guilty of that offense only if all the following facts are proved beyond a reasonable doubt:

(1) The defendant knowingly transferred, possessed, or used another person's means of identification;

(2) Without lawful authority;

(3) During and in relation to a violation of Title 18, United States Code, Section 1029(a)(2), that is, access device fraud, as charged in Count 1 of the indictment.

**FACTS/EVIDENCE AS TO COUNTS 1 AND 2:**
**ACCESS DEVICE FRAUD AND AGGRAVATED IDENTITY THEFT**

KESNER JOASEUS devised the scheme to defraud using the personal

1

identifiers, including the date of birth and Social Security number, of numerous victims to open a fraudulent business checking account and to fraudulently obtain over 25 credit cards. He then used the unauthorized cards to purchase merchandise and withdraw cash at various locations in Palm Beach County and elsewhere. The purchases include two Mercedes automobiles, an Infiniti, tuition at two private schools for his children, and telephone, television and internet service at his home. Some examples of this evidence follow:

### THE SUNTRUST WEALTH MANAGEMENT ACCOUNT

1. On April 9, 2013, JOASEUS opened a SunTrust business account online ending in 2851 in the name of Wealth Management Corporation of America with JT listed as the president. JT later confirmed that this account was fraudulently opened without his knowledge or consent.

2. Between May 2, 2013 and June 28, 2013, JOASEUS made numerous deposits into, and withdrawals from, the SunTrust 2851 account. Many of the transactions were captured on video surveillance at SunTrust branches throughout Palm Beach County, including the following transactions:

- On May 2, 2013, a JOASEUS deposited a purchase check from Discover Card account 9181 for $4,000.
- On May 6, 2013, JOASEUS deposited a balance transfer check from Bremer Bank credit card account 6048 for $17,264.
- On May 17, 2013, JOASEUS deposited a purchase check from Discover Card account 9181 for $7,000.
- On May 24, 2013, JOASEUS deposited a purchase check from a Discover account for $5,500 into the account. Video stills obtained from SunTrust Bank show JOASEUS making the deposit in a white Mercedes-Benz automobile.
- A check dated May 24, 2013 for $10,000 payable to Auto America was used by JOASEUS as a down payment for the 2011 Mercedes that was titled in JOASEUS's name.
- On May 31, 2013, JOASEUS cashed a check at SunTrust for $2,500 payable to KESNER JOASEUS.
- On June 28, 2013, JOASEUS cashed a check at SunTrust for $2,000 payable to KESNER JOASEUS.

### THE BREMER BANK CREDIT CARDS

3. Between April 1, 2013, and April 24, 2014, JOASEUS applied for Bremer Bank credit card accounts, resulting in the issuance of 24 credit cards that were opened by using the real individuals' social security numbers and birthdates without their knowledge or consent. These credit card accounts included many charges relating to KESNER JOASEUS or to the SunTrust Account ending in 2851 which was controlled

2

by JOASEUS, including the examples listed below:

| Date of Application | Name | Account Number | Transactions |
| --- | --- | --- | --- |
| 3/18/2013 | MP | 6048 | SunTrust account 2851 deposits for $17,264 and $5,500. Purchases of credit reports from CreditPlus, including one used to open fraudulent account in the name of LL. |
| 4/1/2013 | JT | 0276 | Credit Plus reports for JG, FH and KESNER JOASEUS, (fraudulent card later issued in the name of JG). |
| 4/17/2013 | HE | 7814 4383 | SunTrust Acct. #2851 makes payments to this account; Credit Plus credit reports purchased for SI and MW. |
| 5/28/2013 | KH | 8668 | $6,000 down payment on Mercedes registered to KESNER JOASEUS; Credit Plus reports purchased for JF, JT, RF and KH used to obtain fraudulent cards. |
| 5/2/2013 | JH | 6607 3608 | $4,318.72 payment to American Heritage School. Credit Plus reports purchased for RM, RQ, CS and JK used to obtain fraudulent cards. Payment from SunTrust Acct. #2851. |
| 6/11/2013 | JG | 4612 2134 | Credit Plus credit reports purchased for HE and JH (both of whom had fraudulent cards issued in their names). |
| 8/21/2013 | MW | 7692 | $1,863.17 payment to Premier Auto Finance for Mercedes registered to JOASEUS. |
| 8/30/2013 | JK | 4027 | $2,517.32 payment to Premier Auto Finance for Mercedes registered to JOASEUS; $1,297.38 payment to Mercedes Benz of WPB for service on Mercedes. |
| 4/22/2014 | KB | 7243 | $1,560.79 payment to Premier Auto Finance for Mercedes registered to JOASEUS. |
| 4/22/2014 | JA | 1448 | $571.29 payment to Comcast; $1,944.71 payment to Mercedes Benz of Palm Beach. |
| 4/24/2014 | JP | 5006 | Payment made to Premier Auto Finance for $1,560.79 on Mercedes registered to KESNER JOASEUS. |

    4.    In addition to the charges described above, dozens of ATM withdrawals were made using these cards at various locations, with surveillance footage at SunTrust branches in Wellington showing JOASEUS as the person making the withdrawals.

    5.    Fraudulent cards were also opened by JOASEUS in the names of

3

individuals RF and MP without their knowledge or consent. For example, on January 18, 2013, Discover received a credit card application in the name RF, using RF's date of birth and social security number, which card ending in 7545 was used to pay Premier Auto Finance in the amount of $1,863.17, and Mercedes-Benz of Palm Beach for $1,103.72 for cars owned by JOASEUS.

6.  Evidence of the above transactions was collected from the banks and the vendors where purchases were made. In addition, records found during execution of a search warrant in the home office of JOASEUS included copies of credit reports, handwritten notes of the various individuals' names, dates of birth, and social security numbers, driver's license and vehicle registration information for the fraud victims' identities.

7.  As to Count 2 of the Indictment, JOASEUS made a cash withdrawal of $500 from the Bremer Bank credit card ending in 1448 issued in the name of JA at the Wellington Green branch of SunTrust in Wellington, Florida. In all, JOASEUS made purchases or withdrawals from this unauthorized credit card 1448 of over $6,000.

## II.   CASE NO. 16-80011-CR-ROSENBERG: ELEMENTS OF THE OFFENSES

The parties agree that the elements of the offenses to which the defendant is pleading guilty are:

### A. Conspiracy to Commit Mail Fraud, 18 USC 1349, Count 1

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1) two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit mail fraud, as charged in the indictment; and

(2) the Defendant knew the unlawful purpose of the plan and willfully joined in it;

### B. Wire Fraud, 18 USC 1341, Count 5

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1) the Defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false or fraudulent pretenses, representations, or promises;

4

(2) the false or fraudulent pretenses, representations, or promises were about a material fact;

(3) the Defendant intended to defraud someone; and

(4) the Defendant used the United States Postal Service by mailing or by causing to be mailed something meant to help carry out the scheme to defraud.

## FACTS/EVIDENCE AS TO COUNT 1, THE SCHEME TO DEFRAUD

1. Between the Fall of 2014 and January 8, 2016, KESNER JOASEUS devised a scheme to defraud by posing as the landlord of residential homes in Palm Beach and Broward Counties that were in fact owned by a Georgia corporation, RHA 2 LLC ("RHA 2") and managed by an affiliate, HavenBrook Homes, LLC ("HavenBrook"), which has a significant online presence as a real property rental company, with a strong presence in Palm Beach County.

2. Throughout this period, JOASEUS identified homes owned by RHA 2 that had been renovated and were ready to be rented, but had not yet been rented by HavenBrook. Without the knowledge or consent of RHA 2 or HavenBrook, JOASEUS, aided by coconspirators MIGUEL TILUS and WADNO DORNEAU, put up signs advertising the HavenBrook houses for rent and listing one of several prepaid cell phone numbers that they used for this purpose.

3. In January 2015, defendant KESNER JOASEUS incorporated "RHA Two, LLC," in the State of Florida, listing the business address as 217 Bayberry Drive, West Palm Beach, FL. JOASEUS established this business in order to create confusion with the legitimate company RHA 2, LLC, d/b/a HavenBrook.

4. JOASEUS hired locksmiths to cut the lockboxes off the homes that were ready for rental, and to change the locks so that he could obtain the keys to the houses. JOASEUS and/or defendants TILUS and DORNEAU would place signs in front of the rental houses, or in the vicinity, advertising that the rental properties were available and listing one of several prepaid cellular phone numbers.

5. JOASEUS would answer phone calls that came in from prospective renters who saw the signs and were interested in the rental houses. JOASEUS always used an alias when speaking with the renters, whether on the telephone, or by text message, usually identifying himself as "George," "George Solomon," or "Daniel."

6. When prospective tenants viewed the house and wanted to lease it, one of the coconspirators, either TILUS or DORNEAU, would meet the tenants at the house, present them with a fake property lease in the name of RHA 2, LLC, and collect first and last month's rent plus a security deposit, typically in cash or money orders.

7. The tenants, believing they had a valid lease with the owner of the house, would then move into the home and would begin making rent payments to the defendants.

8. The defendants often continued to collect rent payments in cash or money orders from tenants for many months. Those payments were either collected in person by DORNEAU or TILUS, mailed to the 217 Bayberry Dr., West Palm Beach address, or mailed to a Post Office Box set up by DORNEAU on or about February 23, 2015 for that purpose. JOASEUS created and mailed fake notices using the HavenBrook Homes logo to instruct the tenants where to send their rent payments.

9. JOASEUS, DORNEAU and/or TILUS would then deposit the money orders into a bank account set up by JOASEUS in the name "RHA Two, LLC," for that purpose, or into one of several other bank accounts. The defendants then made cash withdrawals and cashed checks made payable to DORNEAU and TILUS from these accounts.

10. During the course of the conspiracy, the defendants collected and attempted TO collect from over 150 tenants or prospective tenants over $380,000 in rents and security deposits.

## FACTS/EVIDENCE AS TO COUNT 5, MAIL FRAUD

11. In November, 2014, the defendants collected from RR a cashier's check for $5,150 payable to RHA 2, LLC for first month, last month rent and security deposit on a home belonging to RHA 2 located on Duval Street in Lantana, Florida for which RR signed a lease. Then, on March 17, 2015, JOASEUS placed a letter in the mail to RR thanking her "for becoming a part of our family," and noting the new mailing address for rent payments. It also stated that the rent payments for the house were past due for the months of December 2014 through March 2015.

## III. RELEVANT CONDUCT OF KESNER JOASEUS

12. All of the events described above happened in the Southern District of Florida and elsewhere on or about the dates set forth in each respective count of the Indictment.

13. Defendant KESNER JOASEUS admits that the preceding facts are true and correct and meet all the elements of Counts 1 and 2 of the Identity Theft Indictment, and Counts 1 and 5 of the Rental Fraud Indictment, to which the defendant is pleading guilty.

14. During the course of the Identity Theft offense, KESNER JOASEUS used unauthorized access devices to purchase merchandise or take cash advances totaling approximately $283,621.

15. During the course of the Rental Fraud conspiracy, KESNER JOASEUS directed the two men working for him, TILUS and DORNEAU, who were responsible for

collecting rents, security deposits, and making cash withdrawals of fraud proceeds which were then turned over to JOASEUS. The parties agree that the total relevant conduct of JOASEUS for purposes of the rental fraud loss is approximately $387,167.

16.     The parties agree that the total fraud loss Relevant Conduct is approximately $670,7888, which falls between $550,000 and $1.5 million for sentencing guideline purposes. Final spreadsheets with loss tallies and victim lists will be submitted to the Court with an agreed restitution stipulation prior to sentencing, and defendant JOASEUS agrees to pay restitution to the victims in an amount to be determined by the Court.

17.     KESNER JOASEUS also acknowledges that he has had an opportunity to review all the discovery and evidence in this case with his attorney, and that he has discussed possible defenses to these charges with his attorney.

Date: 7/28/16

LAUREN E. JORGENSEN
ASSISTANT UNITED STATES ATTORNEY

Date: 7/28/16

MARTIN L. ROTH, ESQ.
ATTORNEY FOR DEFENDANT

Date: 7/28/16

KESNER JOASEUS
DEFENDANT

7